Mr. Clore Good morning judges, good morning. May it please the court, my name is Robert Clore, I represent the appellant Juan Pinto. Mr. Pinto is an undisputed member of the class who objected to the proposed class action settlement on the basis that it violates the coupon provision of the Class Action Fairness Act. We're here today asking the court to revisit its opinion in Salcedo and to build on perhaps its opinion in Hunstein to more closely follow TransUnion. Specifically we're here to request that the court hold that a single unwanted text message under the TCPA is a concrete injury sufficient to confer Article III standing. This court is obviously well versed in its two-pronged approach for determining whether there's a concrete injury under TransUnion and Spokio and Maransky and Hunstein. And so that approach of course is a well versed but often divided. True. The approach is a concrete injury to determine if there's a concrete injury you first look to the judgment of Congress and then second history and consider whether the statutory violation is, if there's a close relationship between the statutory violation and the common law toward analog. Do you view an unwanted text message in the same Article III standing universe as spam email? I think it's more invasive than spam email because a text is going to be received on your phone and I think we're at the stage now where the phone has become an extension of a person and their home. I think the court is wise not to allow cell phones into the court because they'd be potentially distracting us right now. So I don't, of course you can receive an email on your phone but I think it's more part of the fundamental component of a phone. Why isn't the nature, whatever the ultimate standing answer is, why aren't those two harms, let's call them harms instead of injuries for now, why aren't those two harms pretty similar? You have a technologically generated system, cell phone on the one hand, computer on the other and you are receiving things that you are forced to see even for only a second. That distracts you from the things you want to do with that technology. Respectfully, let me disagree with only for a second for a text because you initially maybe look at it for only a second but it stays in your catalog, it stays on your phone and you're going to pass by it not just that one instance but potentially on multiple occasions. Not the same with spam email as much as you try to get rid of it? I would argue, Your Honor, is that most people don't access other email, I mean some do, you can certainly access your email via phone but in most instances it doesn't give you a buzz as it would with a text. I think it's more associated directly with a phone than an email which is oftentimes people are sitting in a laptop as opposed to receiving it on their phone. Can I ask you a quick question to the extent that you're traveling under an analogy to intrusion upon seclusion, what do you do with the example in comment D about the knocking on the door? Not just once but it's got to be a sort of a process of hounding. I think that gets to the heart of the issue and the split with the other circuits is hounding I think it's a comment, I don't think it's necessarily an element of the tort. The tort simply requires an invasion upon one's seclusion or private affairs and I think we get to that standard. The question is, is it highly offensive or does it rise to the level of hounding and I think that's where the split is, is as the other circuits are saying, look the Supreme Court doesn't tell us to measure the level of the violation. Is it closely related, is there a close relationship and so. And so would it be fair to say that your view is that and the view you'd like us to adopt is that it's sufficient if it is similar in kind? Yes, I think that is a fair recitation of our position and also the position of the Second Circuit, the Fifth Circuit, the Seventh Circuit and the Ninth Circuit in holding or recognizing that a single text is a concrete relationship. Congress therefore has the line drawing authority to and judgment to deal with degree. Correct. As long as it's the kind of harm. Correct. When we look at the definition of intrusion upon seclusion, it's in two parts and the second part asks if the intrusion, quote, would be highly offensive to a reasonable person, close quote. Doesn't that involve an element of degree? Well I think, so I think highly offensive is asking the court to consider degree and I do think certainly. What do we do with that second part of the restatement defining intrusion upon seclusion though? Highly offensive to a reasonable person may not be highly offensive. I think it can be depending on how text savvy the person is. I know certainly. Like these other examples that we're talking about, if you get a text message, all you have to do is delete it, period, that's it, right? Whereas if you get a robocall or a telephone call, you go to the next room, you got a landline, you got to answer it, you got to listen to it, you can't delete it, a text, you can just delete it. In fact, there are apps that you can buy that automatically delete unwanted text messages, aren't there? Well Judge, I can tell that you're quite text savvy but. No, I'm not. I'm not at all. Well, I've had plenty. I know how to delete a text message quick. I know from speaking with my parents in particular, a text message can cause great concern and confusion in my household. Just one? Just one, yes. Depending on the source and the nature of it and what do I do with this and what does this mean and why am I receiving it? I mean, even our phone numbers at this time are considered private by some. So I would argue that there, I would at least say that it's invasive and it is intrusive. Counsel, was there any evidence of, we've been talking about intangible harms, which is the reason why we compare to a common law tort that existed. Is there any evidence in the record of any tangible harms consistent with your mom and dad who get flustered when they get the text message? So Judge, no, because this case settled relatively early and so I don't think that was. There was some significant litigation at the settlement stage. You're right that it settled early on in the case, but I think from the point at which settlement was announced to when the final settlement was approved, there were numerous orders to show cause and further briefing. New cases had come out and a lot of things were considered by the district court. Was there nothing in that record to suggest any tangible harm that's independent of an intangible one? I'm not aware of evidence, but I know the pleading specifically referenced harm and more specifically an invasion of privacy, but I think perhaps plaintiff's counsel would be the one to more specifically identify whether there is in fact, whether they developed any evidence. I'm not aware of any. And not for the time, not for the time spent to say delete these unwanted texts either. There was no, there was no evidence related to that. Again, I'm not aware of any, but there may be, let plaintiff's counsel speak to that. The issue before us though is, if I've got this right, you tell me if I'm wrong, is whether your client has standing on appeal, right? No. No? No, it's not fair. Your Honor, my client does, has standing on appeal. That's, the issue is whether. Well, no, well, no, you're right. Whether your client has standing to object. No. No? No, no. We're here determining, to determine whether the class as a whole has standing under the, and whether a single violation is a concrete injury under the TCPA. Not specific to my client, the class as a whole. Let's suppose that we stand by Salcedo. How would Salcedo conflict with TransUnion and Hunstein when Salcedo, and now this case involve a different tort, involve intrusion upon seclusion, which arguably could be read to require degree, not just kind? Why is there a conflict with TransUnion and Hunstein? Well, from our perspective, Hunstein, or specifically TransUnion required, does not require an exact matchup, the tort with the statutory violation, and if there's any gap, then it's not close enough. It just said, look, we're looking for a close relationship, and in fact, the holding in TransUnion confirms this because there was a group of class members who, whose credit reports were disclosed to the public and, and gave rise to the, would have given rise to a comparable claim and defamation, but the reports were not necessarily false, only misleading. And the Supreme Court said, well, look, we're not going to split hairs there. We're going to say that there is a concrete injury. And so in that respect, we think it's, it's, it conflicts with TransUnion. But TransUnion doesn't impose any sort of requirement that we're only looking at kind, not degree. No, that's true. It's not in, yes. The other circuits have interpreted this. Yeah, I forgot. There's a weird aspect to this. The district court thought that some members of the class might not have standing under Salcedo, but because others resided outside of our circuit, that they might have standing. You're not here to defend that kind of analysis, are you? Definitely not. But relatedly, or somewhat relatedly, I mean, there were other members of this class who had received multiple texts or phone calls, right? Correct. I think including my client. And so if we were to travel down the Salcedo path, at some point, a court would have to make the cutoff, right? Is too highly offensive and intrusion on seclusion is, is 17, where, I mean, where do we make the cutoff and how do we do that? Wouldn't the court have to do that at some point if we were to go down the Salcedo path? Absolutely. I think this is a case to address this, that issue. I mean, we've already got this case of, of Cordova and. But this, the complaint in this case is based on one unsolicited text message though, right? Oh, no. Well, so the class includes people who, some of whom received multiple texts, but there's a segment of the class, approximately 7%, who received only one text. And so that's, that's really what we're focusing on here. And if it's okay, I'll reserve my remaining time. Well, let me ask one question. Yes. So just in follow-up to Judge Rosenbaum's question, it's not like courts are not confronted with fact-specific questions. If, if, you know, going to the restatement on intrusion upon seclusion, that, that liability is imposed when, where the interference with the plaintiff's seclusion is a substantial one of a kind that would be highly, highly offensive to the ordinary reasonable man as the result of conduct to which the reasonable man would strongly object. I mean, courts are confronted with language like that and having to make those fact-specific determinations all the time, correct? Okay. Mr. Klor, you've saved a couple of extra minutes, so we'll give you seven on Roberto if that's all right. Thank you. All right. So, Mr. Oppenheim, you've got ten. May it please the Court, to follow on to some of the discussion that we've just heard, I think the answer about whether a text message is, in fact, analogous to the intrusion upon seclusion tort for the purposes of standing is actually found directly in the TransUnion opinion at 141SC2204, where the Supreme Court says, various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. These include, for example, reputational harms, disclosure of private information, and intrusion on seclusion. And then for that proposition, the Court cites Gattelhack, which is the Seventh Single Text Message, or text messages, provides standing on that basis. Certainly, the Supreme Court in TransUnion cited Gattelhack for the proposition, though, that intrusion upon seclusion is a tort that we would look to compare with the statutory harm. It did not go any further and embrace any of the analysis in Gattelhack, correct? It was merely a scheme offer. And it cited Gattelhack as an example of a decision involving that tort comparator. Can you answer my question about the record? So to the extent you're focused on the allegations and the complaints, to the extent you're focused on the record that was developed during the settlement proceedings, was there any argument or evidence presented for a tangible harm, independent of what we're talking about right now? No, Your Honor. This is a case about TCPA violations based on calls and based on texts. Some people got one. Some people got more than one. All of them are wrapped up in the settlement. I understand all that. That doesn't really answer my question. Was there an argument made about a tangible harm? I understand that some people got one or two or however many. But was there an argument made that, independent of an intangible harm, in other words, a comparison to a common law tort that existed in the common law roots of our country, that there was a tangible harm that people suffered from getting these text messages, like, for example, the time it takes out of your day in order to scroll through, read through, see if it's relevant, and then delete these things? We've relied on that in other cases. Salcedo itself mentioned that as a possible basis, although in that case, there was no evidence of it and the allegation was too general. I wonder if there was any of that here in this case. I don't think that was anything that anyone relied on. I mean, the texts were what they were. It's a class action, so certainly there was no effort to dig down individually to see what any individual recipients did with their texts. But the text itself is the invasion of privacy. I mean, it's essentially the modern day equivalent of someone breaking into your house and hammering Edith Jostein up on your wall. You can't do that. To what extent did the complaint allege any kind of harm that's comparable to intrusion upon seclusion? At which the texts and the calls... Did the complaint allege about that? Right. About harm? The complaint said that each of the members of the class and the plaintiffs themselves received unsolicited text messages and or calls. Drazen, the named plaintiff, got both. Some of these... They didn't say that are annoysome or annoying or bothersome or anything like that? Yeah, those allegations were in the complaint. I don't have a paragraph site, but I believe there was near the top... And so evidence in support of that allegation, you never reached a stage of litigation at summary judgment or trial or anything like that where you had to produce evidence to support the allegation. Is that right? Right. And I don't know that we ever would need to because Congress made the decision that these things are highly offensive and annoying, hence the statute. All I see in the complaint, and you can correct me if I'm wrong, paragraph 16, you say, through defendant's aforementioned conduct, plaintiff and the other members of the class suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA. I don't see any other allegations that would be responsive to Chief Judge Pryor's question. You can certainly correct me if I'm wrong. Yeah, no, I'm sure you're right. I don't have it in front of me. But again, I think the point is that that's enough. That's why we have oral arguments, so we can get helpful responses from counsel who's supposed to know the record better than we do. Understood. But I think at the end of the day that that's sort of a trip off the path because these things are on their face, determined by Congress to be an invasion of privacy. And in fact— I'm going to back up on that because, I mean, if Justice Thomas had a majority, then sure, that's enough. But I think it's pretty clear that, I mean, the Supreme Court has said, not only in Spokane but in TransUnion, and Weiss and Hunstein, just Congress establishing and saying something, it's not enough. Now, sometimes you'll have, and I think maybe here you have, close enough to a common law tort that you get there. But it's hard for me to hear you say, well, if Congress says it, then that's it. Because I think we have pretty clear evidence from the Supreme Court that that's not going to fly. It makes a great dissent, but I don't think that's our majority right now. I understand what you're saying, Your Honor, and let me be clear about what I'm saying. I'm responding to the issue about whether you need to have more when you're talking about an unsolicited intrusion into your private space, whether you need to have some measurable quantum of annoyance, whether you have to have some measurable number, minimum number of seconds of time wasted. And I think the answer is no. I think that is the sort of thing that Congress saying that, yes, we find these things per se annoying ought to be deferred to. So maybe there's, if we're doing the element-by-element approach, maybe there's some play in the joints for Congress to say within the element of seriously offensive, you know, a little bit annoying is enough. That's similar in the way that misleading was similar to false in transunion. Is that right? Because then they ultimately lead to the same kind of harm. Right. At the end of the day, analogous doesn't necessarily mean satisfying all of the elements such that you could prove and collect on the common law claim, because if that were the you just, you have your common law claim, and you bring it, and you win it, or you go home. Yeah. So both kinds of statements, whether false or misleading, can cause reputational harm. That can be closely related enough. I think that's correct. So I think at the end of the day, this Court needs to come up with a test and an explanation for why maybe the torts, statutory torts at issue in Hunstein and in Moransky did not yield Federal standing, but this one's different. Are you on board with kind, not degree? Yes. Are you on board? Absolutely. And that's where I was getting to, Judge Newsom. And I think that one of the things that the public citizen, Amicus, said that was prescient is the minute you start talking about you need this many texts to get standing, but this many is not good enough, you have necessarily given the game away and are departing from the analysis that you need to use as set forth by the Supreme Court, because zero times a thousand is zero. Zero times two is zero. Either the first one has a scintilla of what is necessary, the injury, to allow for standing or it doesn't. Anything else? Your last 30 seconds. I have a question. This follows up on something that Chief Judge Pryor asked Mr. Klor, and I understand your position in terms of the nationwide class action, but I'm curious. So if you have a nationwide class action and one circuit says that one is enough and another circuit says you need more than one, but it's a nationwide class action, what obligation, if any, does the circuit that requires more than the other have for purposes of ensuring consistency in nationwide class actions and also for purposes of avoiding forum shopping? Those are excellent points, Judge Ubudu. I think that that would argue to just generally to avoid circuit splits because they provide all sorts of procedural headaches in gamesmanship, and the way to avoid a circuit split here would be for this Court to undo Salcedo and follow Gaddelhack. Thank you. Thank you. Mr. Monhite.  May it please the Court. Good morning. My name is Jeff Monhite here on behalf of Defendant Apelli, GoDaddy.com, LLC. Salcedo correctly held that one text message is not a concrete injury for Article III standing, and this Court should reaffirm that result en banc. How many effects are enough? It's an excellent question, Your Honor, and it in some cases depends on both the context and the specific circumstances at issue, and if I could address at the outset, I will come back to your question, but two clarifying points in the record that I think came up during the objectors and the plaintiffs' argument. First, Judge Lux, your question about whether there's any allegation of any tangible harm there is not. Or evidence. I'm sorry, or evidence. No, no allegation or evidence. Allegation that Judge Branch read about invasion of privacy. That's exactly right. That is my— So the question is, is that enough? Is that—is the receipt of a single unwanted text message, which is alleged to be an invasion of privacy, enough? Correct, Your Honor, and we submit that it is not. And the only other clarifying— No matter the content of the text message? If we're talking about the content of the text message, then we're not talking about an analogy to the tort of intrusion upon seclusion, because— That's not necessarily correct. It can be, but it doesn't need to be. You could have a single text message, whether you think it suffices for standing or not, that is very close to the tort of—that we've been talking about. If it talks about your most private details, your loved one's medical history or condition or the like, if you get that sort of text, you're getting really, really close. Now, you may be right that a single text message of that kind is not enough, but I don't think it's right to say that you can categorically carve out text messages from being close to that tort. And, Judge Jordan, I actually—I agree with you on that point. I think what I was trying to get at was that if we're focusing on the content and specifically about, as you described, something private and sensitive in nature, we're talking about an entirely different type of harm than simply just a text that is allegedly for the purpose of telemarketing. They are qualitatively different, and the alleged harms associated with— But telemarketing can come in all sorts of shapes and sizes. We've learned, you know, that your son or daughter has this debilitating disease. Why don't you try our product, which we guarantee will take care of the symptoms? Now what? Your Honor, we respectfully submit that that is not the type of text that would constitute an intrusion upon seclusion, given that we're still talking about what is fundamentally something along the lines of an alleged telemarketing text. And I don't want to lose sight of Judge Rosenbaum's question either. I apologize for weighing away from that. The one other clarification I did want to make is that this case only involves one text message. Well, but really, does it—I mean, we're talking about a class action. And even if we were to, as I was saying before, even if we were to go down Salcedo's path, at some point, the district court would have to decide where to draw the line as to how many text messages can qualify, because there are other members of the class who have multiple text messages. That is incorrect in this case. So this case involves one text, even on the record below. It was that some of the class members who received that one text may also have received one or more phone calls. But even if we're outside the context of this case, are you telling us that Article 3 of the Constitution of the United States, when it uses the word case, asks courts to distinguish between a single text message and two or 10 or 10,000? The United States Constitution makes that distinction. In terms of—yes, Your Honor, because at the end of the day, we're talking about what is the harm associated with the action at issue. Where do you draw the line? Your Honor, this case only concerns one text. I know that. But we have to write an opinion that is not going to be just for this case. We're sitting on bonk. It's going to be cited and used correctly by courts in our circuit. So what do we tell district courts that are now going to be faced with a text message once a day for 30 days? And Your Honor, I think there, that example, a text message once a day for 30 days, that would be analogous enough. That is close enough. And we would concede that. Says who? Says who? According to what? I'm just having a hard time understanding what the limiting principle is. And, Your Honor, my apologies for speaking— No, no, no. It's all good. I spoke over you first. In the restatement, that is the example that Judge Jordan just gave is sort of drawn specifically from that comment in the restatement of someone receiving a call once a day for 30 days. But why is that the same as what the common law tort is, as opposed to similar in kind but not necessarily degree? And that's an excellent question. I think one of the amicus briefs, this is the ACI brief, pointed to a case in Georgia called Benedict. And in that case, which wasn't a TCPA case, but the allegations in that case were that there were 100 calls in a short period of time. And the plaintiff tried to make out a claim for intrusion upon seclusion. And the Court in that case said 100 calls, that's not a substantial burden. And I certainly respect that the judges here may disagree with that conclusion. But that's certainly a case where there would be a close enough analogy to the tort. But you've already given away the game that the receipt of unwanted text messages is the kind of harm that is the subject of the comparator tort, intrusion upon exclusion. Now we're just arguing about degree. If I may push back on that, Chief Judge, the difference is that there is no harm associated with one text because when we look at the restatement, the only example and the only There's no harm or it's not actionable. It's not enough to be actionable. There's no cognizant of harm because the only harm associated with one text is the I think the difference is that there is a qualitative difference between the alleged harm associated with one text. It's a difference of degree. It's not what is a difference of degree, but it's also a difference in kind. It's both. Can you articulate the limiting principle? Absolutely. And I think in part I would refer to the Chief Judge's concurrence in Hunstein because there where we consider that there is also this element that it has to be highly offensive, and if that element is absent, then the comparison fails. The problem there was that that was a different tort where the kind of harm was mere offense versus reputational harm, and the point I was making there was that just disclosing someone's name and their son's name, it was a patient and an amount of a debt. If someone takes offense at that, it is truly mere offense. It doesn't cause reputational harm. It's not the same kind of harm. Here we're talking about just the number of unwanted text messages. It's the same harm. It's just at what point does it become actionable? At what point is the degree great enough? The repetition is the harm. When we're talking about the analogy to internship prosecution. I thought it was a privacy harm. It is a privacy harm, but the only time you get any harm from an alleged invasion of privacy is through repetition. There is no invasion of privacy from one text. Two texts, repetition, two is enough? It's getting into context-dependent situations. Is it possible that two texts sent an hour apart is different from two texts sent over the course of a year? Certainly. This case doesn't present those facts. Well, once we're talking about exactly how many texts is enough, why isn't that where Congress does have some play in the joints? We're talking about is it one, is it 500? Maybe Congress gets to make that decision once you've conceded that some amount of text could qualify. And we respectfully submit that Congress has not made any legislative findings on the alleged harm associated with text messages. So for me, that doesn't add up because if the statute doesn't apply to text messages, then at that point, it's a question of do the plaintiffs have a cause of action? But once we've conceded that it applies to text messages, which I think we have to at this stage of the case, then I don't see how a lack of congressional findings really moves the ball. I think we're talking about two different issues. So of course you're right that this case is not about the interpretation of the TCPA itself, but when we're talking about the judgment of Congress, we respectfully submit that it's about the legislative findings of the underlying harm targeted by the statute. And since the Congress didn't identify or do not include text messages in the TCPA and has not subsequently explicitly made legislative findings about any harm associated with a single text message, that there isn't anything to draw on from congressional  Roberts. Let me ask you just a quick question before you conclude. So I take you not — I don't want to put words in your mouth, but I guess I'll just ask the question. Do you dispute the kind-not-degree metastructure? Both of your adversaries today embrace it. I was loud and proud about it in the Hunstein dissent, of course, so you know where I stand. Do you dispute the applicability of that metastructure here? No, Your Honor. And it's that — as we saw in Salcido, even though there are — there is language that makes it sound like it's a difference of degree, ultimately, that court concluded based on a qualitative difference. And I believe even in your dissent in Hunstein, there is a footnote that talks about how the thrust of Salcido is ultimately that outcome depends on a difference  Thank you, Your Honors. Thank you. Mr. Klor, you have five minutes. Thank you again, Judges. Hunstein specifically anticipated — well, not precisely anticipated, but specifically anticipated this kind of issue when it said a case may arise where, quote, a plaintiff actually pleads a harm smaller in degree rather than entirely absent. That is what we have here. Justice Grant, I think you said it correctly that it's the same — the analysis is the same as in TransUnion where there was a false — the false misleading difference. And here we have invasive versus highly offensive. I think they're close enough to confer Article III standing. Taking into consideration the fact that the parties have a previous relationship, I mean, this isn't just a text message that we're dealing with that's out of the blue. The parties in this case, the plaintiffs in this case, have a previous commercial relationship with GoDaddy. And some of their customers might find these text messages to be useful. The facts here are that these specific class members — these are unwanted texts. They weren't — they weren't solicited. They're unwanted. So I think it provides context to say, yes, they have a prior relationship, but — And what made them unwanted? So I can't recall if this is a situation where they were on the do-not-register list or not. But definitely the allegations are that every person who received — who was in this class received an unwanted text or call. Just wanted to touch on the — so, Judge Grant, you're asking about where do we draw the line, one or two. To remind the Court of course the Court is aware that in Glasser and Cordova it considered phone calls and came to the conclusion that two phone calls did constitute a concrete injury under the TCPA. So if the Court is going to draw the line at one, it's really an arbitrary line and it is going to invite just what Justice Abudu is referring to as forum shopping and everyone who — people who want to avoid — people who are going to avoid the Eleventh Circuit. So that's — I don't think that's not what — But if that were a concern, then why would this have been filed in the Eleventh Circuit? Pardon? I mean, if that really were a concern, why would this be filed in the Eleventh Circuit right now? Because Salcido was on the books, right? No, that's true. I mean, so I — Yeah. Yeah. Okay. The plaintiff apparently chose a bad forum. Is that like an accident? I still think it is — it's good to have some cogent body of law where there's a consistency. The meaning of case or controversy in Article III has to be the same throughout the country, right? Now, maybe all of our sister circuits are wrong, but it has to be the same. And the district court saying that because some members of the class reside in circuits where it would be considered a case or controversy, I'm going to certify — that can't be the right approach. It has to be one constitution, one uniform rule. And somebody's right or somebody's wrong, right? You said it much better than I did. Thank you, Judge. That's — I agree. I wanted to speak briefly. This hasn't been the focus of the argument, but the judgment of Congress, I think it's one of the amici the public citizen pointed out in December 2019 after South Sato, Congress specifically amended the TCPA to require the FCC to take certain actions, and in so doing it clarified that it does apply to text messages, and that's at Section 227I1A. But surely you would concede that that was a very specific type of text message not involved here. It's when there is an unauthenticated number, a spoofed call. That's true. It's true. But it does reference that text messages sent in violation of subsection B, which is the using automatic telephone dialing systems. So it does reference it, but I agree it's in a different context. I was going to say public nuisance, but it looks like we have about 20 seconds, so that might be a mistake. Give us your best in 20 seconds. Okay. I think it's also analogous, and — Oh, now you're coming up with an entirely new theory that we've never heard this morning. And the complaint does not talk about nuisance. True. It talks about invasion of privacy. Invasion of privacy. That's correct. I'm happy to add it. Okay, Mr. Klor. Thank you. Thank you. We have your case. We're going to be in a brief recess, hopefully no more than five minutes, to reassemble the court.